JOHN MURRAY, Treasurer, &c., *vs.* EDWIN R. SMITH et al.

The statute (Hutch. Code, 231, § 8) makes the county treasurers of the several counties *ex officio* treasurers of the school fund of their respective counties; which fund consisted of all escheats, fines, and forfeitures adjudged by the courts of the State; of the money arising from the grant of licenses, and the proceeds of the special tax authorized by that statute.

The statute of 4th of March, 1846, (Hutch. Code, 232, § 13,) makes it the duty of the county treasurers of the several counties to loan out all moneys belonging to the school fund of their respective counties, not appropriated by the school commissioners, for such time and for such security as said commissioners may direct and approve. *Held*, that the county treasurers are expressly authorized and required by this statute to loan out the school fund which was not appropriated.

The act of 4th of March, 1848, (Hutch. Code, 236, § 2,) which requires the school commissioners of the several counties to report to the police court the

number of children within their respective beats who are from any cause deprived of the means of education; and it shall be the duty of the police court on the return, etc. *Held,* that this act in terms applies only to money belonging to the school fund, which at the time of its passage was in the county treasuries, and to moneys which might afterwards arise from fines, licenses, and forfeitures; but it does not apply to the interest which accrues to the counties on their distributive portions of the proceeds of the Chickasaw school lands, nor to the money received by the counties as their portions of the appropriation made by the act of 9th of March, 1852.

If it were conceded that the legislature intended that the money on hand with the county treasurers at the time of the passage of the act of the 4th of March, 1848, and the funds arising from licenses, fines, etc., should not be loaned out, notwithstanding that the validity of the note sued on would be upheld, as there is nothing upon the record which rebuts the presumption that the money which was loaned by the county treasurer to defendants was money belonging to the school fund of the county, which the law made it the duty of the treasurer to loan out under the supervision of the school commissioners.

IN error from the circuit court of Tippah county; Hon. P. T. Scruggs, judge.

The facts of the case are contained in the opinion of the court.

*John W. Thompson,* for appellant.

The record in this cause presents but two questions for the consideration of the court, namely: The sufficiency of the original and amended complaints, and the illegality of the consideration of the note sued on. The following authorities, it is believed, fully sustain the legal sufficiency of both the original and amended complaints. 13 S. & M. 411, 412; 8 Cranch, 30; 8 Man. R. 103; 3 How. R. 97, 98; 6 Ib. 184, &c. There is as little obscurity upon the second question involved, the question of illegality of consideration. By the act of 1846, § 13, p. 101, 102, the county treasurers are authorized and required to loan all the money belonging to the common school fund, not appropriated by the school commissioners; by the 1st section of the act of 1850, Special Acts, p. 230, the "annual interest" of the money belonging to the common school fund (with other funds mentioned) are declared to constitute the school fund of Tippah county, Mississippi.

Murray *v.* Smith et al.

No interest could accrue without a loan of the said fund, or of some part thereof. The power to loan is and was vested in the county treasurer; but the time for, and the security upon which the money was to be loaned were to be approved by the commissioners of the school fund. The county treasurer was, by the 13th section of the act of 1846, p. 101, 102, authorized and required to loan the school fund of Tippah county not appropriated; but the time for, and the security upon which the loan was to be made, were to be "directed" and "approved" by the commissioners of the school fund of said county. If a loan were made by the treasurer without such "direction and approval," it would at most be but an illegal exercise of a granted power, which would afford no excuse to the borrower of the money for refusing a repayment of the money. Upon this point the authorities are very numerous; but as the question has been so often adjudicated, a few of them only need be recited. 13 S. & M. 408–412; Story on Prom. Notes, § 189; Story's Confl. of Laws, § 243–260; 6 How. (Miss.) R. 184, &c.; 7 Ib. 531–533, &c.; 2 Term. R. 169; 3 Rand. 136; 9 Mass. R. 423; 4 Johns. Ch. R. 370; 2 Kent's Com. 205, 206, 300, 301; 1 Cowen, R. 671; 7 S. & M. 697; 15 Johns. R. 281, 436; 8 Ib. 425; 13 Peters (U. S.), R. 545; 12 S. & M. 107.

In this action plaintiff sues as the treasurer of Tippah county, Mississippi; and as successor of Sion Rogers, the predecessor of plaintiff in said office. This is altogether regular. Acts of 1846, § 11, p. 101, 102; 13 S. & M. 411, 412.

*Glenn*, on the same side.

*Potter*, for appellees.

By reference to the seventh section of the act of 1846, p. 231, it will be seen that the fund to be distributed constitutes the whole school fund of the county.

It seems plain that the power to loan, which is derived solely from the act of 1846, is taken away by the act of 1848. By the 13th sect. act 1846, the treasurers were "to loan out all moneys belonging to said school fund, not appropriated by the

school commissioners, for such time, and for such security, as said commissioners may direct and approve."

But the act of 1848, requires the commissioners to divide and appropriate all the school fund "equally among the respective police beats." The whole fund is thus appropriated, and as the treasurer was never authorized to loan any part, except such as was "not appropriated," it follows that the power to loan any part of the fund is, necessarily, taken away by the act of 1848. The subsequent acts do not aid the cause of plaintiff in error, but, on the contrary, confirm the conclusion that this loan was without authority. See acts 1850, p. 230; Ib. p. 68, § 5; Ib. 1852, p. 146, § 3, 6. If this view be correct, the contract was void, and no recovery can be had upon the note; whatever may be the right of the county in a different action. The money is not lost to the county, for the treasurer and his sureties are clearly liable.

That the note sued on is void, see 4 Peters, 410; Story, Prom. Notes, § 189; Story on Contr. p. 539, 544, 547.

Mr. Chief Justice SMITH delivered the opinion of the court.

The plaintiff in error was the successor to Sion Rogers, in the office of county treasurer for the county of Tippah, to whom the note sued on in the court below was given. The consideration of the note was money, which belonged to the school fund of said county, loaned to the defendant in error by Rogers affecting to act in his official character.

The defendant demurred to the complaint. The demurrer was sustained, and the plaintiff declining to amend his complaint, judgment final was entered for the defendant; to reverse which, this writ of error is prosecuted.

But two questions are raised by the demurrer: 1. Whether the legal title to the note vested in the plaintiff in error, as the successor of Rogers, so that he could maintain an action upon it; and, 2. Whether Rogers, as the treasurer of the county, acting under the supervision of the school commissioners for the same, had the authority to loan out the money belonging to the school fund.

1. The decision of the first question depends upon the deter-

mination of the second. For we cannot doubt that, if at the date of the note in suit, the treasurers of the several counties to which the statute of the 4th of March, 1846, applied, were authorized to loan the moneys belonging to the school funds of their respective counties, the legal title to the note, and consequently the right to sue upon it, vested in the plaintiff in error under the provisions of the 11th section of the said statute. Hitch. Dig. 231.

2. By the 8th section of this statute the county treasurers of the several counties were made *ex officio* treasurers of the school fund of their respective counties. This fund, according to the provisions of the 7th section of the same act, consisted of all escheats, fines, and forfeitures adjudged by the courts of this State; of the moneys arising from the grant of certain licenses, and of the proceeds of the special tax authorized by the same.

By the act prescribing the " mode of applying school funds in the county of Tippah," passed 8th March, 1850, it was provided that all moneys to which that county might be entitled under the provisions of any act passed at that or any future session of the legislature, together with the moneys arising from the sources designated in the 7th section of the act of the 4th of March, 1846; the annual interest accruing from any money then on hand belonging to the school fund, and also the interest which might annually accrue on the distributive share of said county in the net proceeds of the sales of the Chickasaw school lands, should be paid into the county treasury thereof, and should constitute the school fund of the same. Acts of Leg. 1850, p. 230.

By the act to promote common schools, approved on the day following, two hundred thousand dollars were appropriated for that purpose, which was directed to be distributed amongst the several counties in this State, according to the number of children in each, entitled, under its provisions, to the benefit of instruction. The 5th section of this act provides, "that the portion of said fund which the several counties may respectively receive under its provisions shall be loaned out under the supervision of the boards of county police of the respective counties,

or the school commissioners of such counties in which, by law, such commissioners have the control of common school funds, at the same rate of interest that the money arising from the sale of the sixteenth section is loaned, and upon the same security, and that the interest alone shall be applied to purposes of common school education.    Acts of Leg. 1850, p. 68.

It is evident, under the operation of these several statutes, that the amount to which Tippah county was entitled, as her distributive share of the said appropriation, became a part of the school fund of that county, to be loaned out at interest under the supervision, not of the board of county police, but under that of the school commissioners for said county.

The thirteenth section of the act of the 4th of March, 1846, above referred to, made it the duty of the county treasurers to loan out all moneys belonging to the school fund of their respective counties, " not appropriated by the school commissioners, for such time and for such security as said commissioners may direct and approve."   This is an express authority to the county treasurers to loan the school fund which was not appropriated, and must be decisive of the question unless, as maintained in argument, the school fund of Tippah county was appropriated by the act of the 4th of March, 1848; which act of appropriation by the legislature it is insisted, by necessary implication, deprived the treasurer of said county of all right to loan out the money of the school fund.

We do not concur with counsel in this position.   The act provides, " that it shall be the duty of the school commissioners (of Tippah) to report to the police court, at as early a period as practicable, the number of children within their respective beats, who are from any cause deprived of the means of education, and it shall be the duty of the said police court on the return of such list, to divide the money now in the county treasury, or which may hereafter arise from licenses, fines, &c., as provided in the seventh section of the act of the 4th of March, 1846, equally among the police beats for the education of such children."

It is evident that this act, in terms, applies only to money belonging to the school fund which at the time of its passage was

in the county treasury, and to moneys which might afterwards arise from licenses, fines, and forfeitures. It does not apply to the interest which accrues to the county on her distributive portion of the net proceeds of the sales of the Chickasaw school lands, and it is very certain that it cannot be held to apply to the money received by the county as her portion of the appropriation made by the act of the 9th of March, 1852. As to that portion of the school fund arising from these sources, it cannot be questioned that it is the duty of the county treasurer, under the supervision of the commissioners, to loan it out at interest. If it were, therefore, conceded that it was the intention of the legislature that the money on hand at the time of the passage of the act under consideration, and the funds arising from licenses, fines, &c., should not be loaned out, we would, notwithstanding, be compelled to uphold the validity of the note, as there is nothing upon the record which rebuts the presumption that the money which was loaned by the treasurer to the defendant in error, was money belonging to the school fund of the county which the law made it his duty to loan out under the supervision of the school commissioners. But we do not admit that it was the intention of the legislature to appropriate, in the sense contended for by counsel, the money then in the county treasury belonging to the school fund, or which might thereafter arise from escheats, fines, and forfeitures. It is very manifest from the face of the act itself that they did not contemplate an actual delivery of the money to any person to be applied to the objects intended, by which that portion of the money belonging to the school fund would be withdrawn from the custody of the treasurer and the supervision and control of the commissioners. On the contrary, the moneys were left in charge of the treasurer to be disbursed under the direction of the commissioners, who were to be governed, of course, in their appropriations of the money, by the provisions of the act. It appears to have been the intention of the legislature, simply to lay down a rule in the application of the moneys of the school fund by which each child in the different police beats, entitled to instruction under the provisions of the act, would be secured in an equal participation in the bounty of the State. It is

manifest that this can be done without repealing the provisions of the 13th section of the act of 1846, which directed that all moneys belonging to the school fund which were not appropriated by the commissioners, should be loaned out at interest, under their supervision, by the county treasurers.

Let the judgment be reversed, and cause remanded for further proceeding.